In re THOMPSON DESIGNS, INC., d/b/a Pinnacle Homes, Debtor.

THOMPSON DESIGNS, INC., d/b/a Pinnacle Homes, Plaintiff,

v.

TREASURER OF HAMILTON COUNTY, Landmark Savings Bank, FSB, Pierce Drywall Plastering, Inc., Robert Glass & Services, Inc., Trimmasters, Inc., Greg Spindell, Williams Comfort Air, Inc., Goshert's Insulation Co., Canac Cabinetry Kitchen & Home Design Center by Charles Maranto, Savvy Decor by Linda Mordoh, Mees Tile & Marble, Bei, Inc., Sanders Building & Constructing Co., Inc., Matt Grubar, Inc., West Roofing & Supply Co., Dr. Michael Bennett & Marcha Bennett, MacDonald Tile, Kenton and Andrea Yokey, Blakely Wholesale Corp. d/b/a Tile Works, Inc., Defendants.

Bankruptcy No. 97–02707–V–V–11.
Adversary No. 97–162.

United States Bankruptcy Court, S.D. Indiana.

Oct. 10, 1997.

---

Timothy Black, Hostetler & Kowalik, Indianapolis, IN, for Debtor/Plaintiff.

David J. Jurkiewicz, Fiewell & Hannoy, Indianapolis, IN, for Landmark Savings Bank and Angles & Lines.

John E. Bator, Cohen & Mald, Indianapolis, IN, for Pierce Drywall, Greg Spidell, Canac Cabinetry & Home Design, Savvy Decor by Linda Mordoh.

Robert G. Barker, Indianapolis, IN, for Robert Glass & Services.

Wendy Ponander, Baker & Dainiels, Indianapolis, IN, for Goshert's Insulation Company.

Michael J. Andreoli, Zionsville, IN, for Sanders Building & Constructing.

Michael J. Hebenstreit, Kroger Gardis & Regis, Indianapolis, IN, for Matt Grubar, Inc.

John Graub, II, Rubin & Levin, Indianapolis, IN, for West Roofing & Supply.

Jay P. Kennedy, Kroger Gardis & Regis, Indianapolis, IN, for Dr. Michael Bennett & Marcha Bennett.

John Merlau, New Palestine, IN, for MacDonald Tile.

David J. Theising, Christopher & Taylor, Indianapolis, IN, for Blakely Wholesale Corp.

Raymond M. Adler, Noblesville, IN, for Schuler Plumbing, Inc.

Mark E. Need, William Hewitt & Robbins, Greenwood, IN, for Kenton Yokey & Andrea Yokey.

Linda Corbett, Louisville, KY, for Mees Tile & Marble.

Brian Weiss, Indianapolis, IN, for Williams Comfort Air.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

The issue before the Court is the relative priority of the lien of Kenton and Andrea Yohey ("the Yoheys") created pursuant to 11 U.S.C. § 365(j) against the sale proceeds of a home which the Yoheys had a contract to purchase from Thompson Designs, Inc. ("DIP").

On or about April 4, 1996, DIP, by its authorized agent, entered into a contract with the Yoheys to build a home and to sell them the home and real estate situated at 11056 Windermere Boulevard, Fishers, Indiana. The original purchase price was $558,000; the price was subsequently adjusted to $558,550, then ultimately reduced to $519,000. The Yoheys paid DIP an initial downpayment of $50,000. On or about July 4, 1996, an authorized agent of DIP contacted Mr. Yohey and requested an additional payment, pursuant to which the Yoheys paid an additional $10,000.

At some point during the construction process, DIP and Yoheys had a dispute and DIP

refused to transfer the home to the Yoheys for the balance of the amount owed and in the condition required by the contract. DIP also refused to refund to the Yoheys the $60,000 previously paid. The Yoheys brought a breach of contract action in state court; before that case was adjudicated, DIP filed bankruptcy.

DIP filed its voluntary Chapter 11 petition in bankruptcy on March 13, 1997. The house was sold by the Court to a third party at auction on May 8, 1997, for $430,000. At issue is the relative priority of the Yoheys' claim in the net sale proceeds vis à vis the perfected mortgage lien of Landmark Savings Bank, FSB ("Landmark") and the holders of the mechanic's liens against the property.

The Yoheys assert that their claim is secured by a lien against the net sale proceeds pursuant to 11 U.S.C. § 365(j), which states as follows:

[A] party whose executory contract to purchase real estate from the debtor is rejected and under which such party is not in possession has a lien on the interest of the debtor in such property for the recovery of any portion of the purchase price that such purchaser or party has paid.

The Yoheys acknowledge that the language of § 365 gives little or no guidance as to the effective date of the lien; however, they assert that, by inference, under certain Indiana cases, they are entitled to pro rata payment along with the mechanic's lienholders and Landmark. Under these cases, the Yoheys assert, even a subsequent mortgagee may achieve parity with mechanic's lienholders in certain cases. Because the Yoheys' money was used to pay subcontractors, Yoheys infer, this sets up the precise equitable situation contemplated by the Indiana cases:

The Yoheys made a substantial downpayment toward the purchase of the home. The initial downpayment was used to pay subcontractors for work upon the home. When funds began to run short for payment to subcontractors, the debtor's plea for further funds resulted in *additional* payment from the Yoheys for payment to the subcontractors. A tremendous inequity could now result, if the subcontractors now recover "ahead" of the lien claim of a party whose funds have already paid the subcontractors in part. (emphasis in original)

In seeking equity one must do equity; as Landmark had notice of the use of its loan funds to pay subcontractors, so did the subcontractors have notice of the use of Yoheys' downpayment funds to pay subcontractors. As stated in the Indiana cases, the Yoheys' money paid amounts that otherwise would have been claimable as mechanic's liens. Accordingly, the Yoheys' lien should have equal priority to other mechanic's lienholders.

Yohey Brief at pp. 6–7.

In response, Landmark asserts that, by its own definition, an executory contract is not breached prior to the filing of the bankruptcy petition but is only breached once the contract has been rejected. Accordingly, any lien created in favor of Yoheys under § 365(j) arose pursuant to the terms of § 502(g) immediately prior to the filing of DIP's petition. Therefore, the Yohey's lien arose later in time and thus was inferior to the mortgage lien of Landmark and the mechanic's liens of the contractors and suppliers. Even if the Court were to determine that the § 365(j) lien had attached at some earlier point in time, Yoheys' lien is still subordinate to those of Landmark and the mechanic's lienholders because § 365(j), by its very terms, creates the lien only in the "debtor's interest" in property. As there was never a time when DIP's interest in the realty and improvements exceeded the consensual and statutory liens upon them, Landmark argues, DIP never had an interest in the property to which the Yoheys' lien could attach.

The Yoheys cite *Aetna Bank v. Dvorak*, 176 B.R. 160 (N.D.Ill.1994) for the proposition that it is unclear when the law would deem the § 365(j) lien to have arisen. Because there are intervening equitable principles in this case, they argue, the Court should deem that the Yoheys' lien be treated in parity with those of Landmark and the mechanic's lienholders.

Landmark asserts that the Yoheys' essential premise, that the § 365(j) lien does not

arise at a time fixed by statute and therefore should be deemed to arise at a time chosen by the Court to be most beneficial to the Yoheys, is incorrect.

The *Dvorak* case involved facts somewhat similar to those present in this case. In 1990, the debtor, McDonald Creek, entered into a plan to develop certain real estate. The purchase of the land was financed through Aetna Bank ("Aetna") and a mortgage was properly recorded on September 6, 1990. In early June, 1991, the Dvoraks signed a contract with McDonald Creek to purchase a home and lot. The Dvoraks had paid McDonald Creek over $100,000 by November, 1991, at which point progress on the construction ceased. On March 20, 1992, McDonald Creek filed its Chapter 11 petition. The Dvoraks asserted a § 365(j) lien against the sale proceeds. Aetna did not dispute the existence of the lien, however the parties disagreed on the issue of the priority of the lien. Aetna moved for summary judgment in the bankruptcy court, arguing that its prior recorded mortgage lien had a higher priority than the Dvoraks' § 365(j) lien. The bankruptcy court granted the motion, and the Dvoraks appealed to the district court, arguing that their lien deserved priority over Aetna's.

The district court affirmed the bankruptcy court's decision that Aetna's lien was superior to the Dvorak's lien, rejecting the Dvoraks' claim that § 365(j) created a lien with special priority. The court analyzed the statute utilizing a "plain language" approach and stated that § 365(j) does not specify what priority the lien should receive. The court found that the absence of any reference to lien priority was evidence that Congress did not intend to give holders of § 365(j) liens any special treatment other than to create the lien in the first place. Because the mortgage lien of Aetna was admittedly perfected prior to the creation of the contract between McDonald Creek and the Dvoraks, the Court found Aetna's lien to be superior to the § 365(j) lien of the Dvorak's.

The Yoheys assert that the outcome of the *Dvorak* case was tied to the undisputed fact that Aetna's lien was created and perfected before the contract between McDonald and the Dvoraks was ever signed. Under those facts, the Yoheys admit, a § 365(j) lien would be subordinate to a perfected mortgage lien. However, in the case at bar, the Yoheys' § 365(j) lien may supersede the claims of other lienholders depending upon when the Court determines the § 365(j) lien to have arisen. The Yoheys offer Footnote #2 as support for their claim that the holding in *Dvorak* is dependent upon the fact that Aetna's lien was admittedly prior to that of the Dvoraks:

> FN2. It is not clear when the law would deem the Dvoraks' claim to have arisen. Reasonable arguments could be made that the lien was effective as of the day the debtor filed for bankruptcy, the time the Dvoraks made their payment, or the time McDonald Creek rejected its land sale contract with Dvoraks. It is also possible that Congress intended § 365(j) liens to have the very lowest priority of all secured interests in the bankruptcy estate; after all, the statute gives the claimant "a lien on the interest of the debtor in [the] property," 11 U.S.C. § 365(j), and the debtor's interest is subordinate to those of all the other secured creditors. The facts of this case do not require us to determine which of these approaches is correct.

The Yoheys correctly point out in their brief that the facts of the case at bar *do* require this Court to determine which approach is correct. If the § 365(j) lien arose at the time the Yoheys made their downpayments, their lien may be superior to some or all of the mechanic's liens and perhaps the mortgage lien of Landmark (the record does not reflect the date of the creation or perfection of the mortgage lien) whereas, if the lien arose at the time DIP filed for bankruptcy, the Yoheys' lien would be subordinate to those of Landmark and the mechanic's lienholders (absent some equitable subordination).

▆▆▆ All statutory interpretation begins with the language of the statute itself, and where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290

(1989) *quoting Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917).

 Section 365(j) of the Bankruptcy Code grants a lien to a party whose executory contract to purchase real property from the debtor is rejected, and that lien attaches to "the interest of the debtor in such property". 11 U.S.C. § 365(j). As a debtor's interest is subordinate to those of all other secured creditors, it is clear that Congress intended § 365(j) liens to have the very lowest priority of all secured interests in the bankruptcy estate. The fact that the statute is silent as to the priority of the lien leaves this conclusion unrefuted. Based upon this plain reading, the Court agrees with Judge Moran's statement in *Dvorak, supra*, that "(t)he absence of any reference to lien priority in the plain language is our first clue that Congress did not intend to give holders of § 365(j) liens any special treatment other than to create the lien in the first place." 176 B.R. at 163.

The *Dvorak* opinion correctly points out that there is nothing in either the Senate Report or the House of Representatives Report on the statute which would support a contrary conclusion. *See* S.Rep. No. 95–989, 95th Cong., 2d Sess. 60 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5846; H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306. Rather, it seems more likely that the purpose of enacting the statute was to elevate the purchaser's claim for the return of his downpayment above the claims of general unsecured creditors. Certainly if Congress had intended to interfere with the relative rights of consensual and state statutorily created secured claims, it would have done so much more specifically:

> Section 365(j) is intended to give a limited form of protection to the non-debtor vendee upon rejection of the [land sale] contract. That protection is restricted to a lien covering only the debtor's interest in the property forming the subject of the rejected contract ... If Congress had intended that the disappointed vendee be given an administrative priority or other forms of adequate protection in addition to or in lieu of the lien granted by Section 365(j), it surely could have done so but it did not. In effect the lien is the "adequate protection" Congress has chosen to protect the debt owed to such a vendee. No amount of alchemy can transform that congressionally mandated protection into something greater than it is, a lien against the property and nothing more.

*Dvorak, supra* at p. 164 *citing Delta Energy Resources, Inc. v. Damson Oil Corp.*, 72 B.R. 7, 12 (W.D.La.1985).

Finally, the Court rejects the Yoheys' equitable argument that their claim should be treated in parity with the claims of the mechanic's lienholders. The Indiana cases cited by the Yoheys involve the relative rights of mortgagees, mechanic's lienholders, and judgment lienholders in a non-bankruptcy context and are, therefore, irrelevant to the issue before this Court.

For the reasons set forth above, the Court finds that the Yoheys' § 365(j) lien is subordinate to those of Landmark and the mechanic's lienholders.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.